UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KEVIN BRADY

        Plaintiff,

    - against -

                                    Docket No.:  06-CV-5576
                                            (JFB)(WDW)

COUNTY OF SUFFOLK, RICHARD DORMER,
HENRY MULLIGAN, THOMAS PALMIERI, and
MICHAEL MURPHY, in their individual and official
capacities,

        Defendants.
-------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LEEDS MORELLI & BROWN, P.C.
ONE OLD COUNTRY ROAD, STE 347
CARLE PLACE, NY 11514
516-873-9550

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

    I.      SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.     SUMMARY JUDGMENT IS NOT APPROPRIATE
           ON PLAINTIFF'S FIRST AMENDMENT CLAIMS . . . . . . . . . . . . . . . . . . . 7

          A.    Plaintiff Engaged in Protected Speech . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          B.    Adverse Employment Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          C.     Casual Connection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**CASES**                                                                 Page

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Auriemma v Rice,
910 F.2d 1449, 1460 (7th Cir. 1990),.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Benedict v. Town of Newburgh Town Board
125 F. Supp. 2d 675 (S.D.N.Y 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Borrero v. Collins Bldg. Services, Inc,
2002 WL 31415511 at *15 (S.D.N.Y Oct. 25, 2002) . . . . . . . . . . . . . . . . . . . 11

Campbell v. Towse,
99 F.3d 820, 828 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Celotex Corp. v. Catrett,
477 U.S. 317,323 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Chertkova v. Conn. Gen. Life. Ins.,
92 F.3d 81, 90 (2nd Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

City of San Diego, California v Roe,
543 U.S. 77, 83-84 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Connick v. Myers,
461 U.S. 138, 140 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cromer v Brown,
88 F. 3d 1315, 1327 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Egelston v. State Univ. College at Geneseo,
535 F.2d752,754 (2d cir 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Eastway Contr. Corp v. City of New York,
762 F.2d 243 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ezekwo v. New York City of Health and Hosp. Corp.,
940 F2d 775, 781 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fikes v. Daphne,
79 F.3dd 1079, 1084 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gallo v. Prudential Residential Serv..L.P.,
22 F3d 1219, 1224 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Garcetti v. Cebellas,
547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Givhan v. Western Line Consol. School District,
439 U.S. 410,414 (1979); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gordon v. New York City Bd of Educ.,
232 F. 3d 111, 117 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gorman- Bakos b. Cornell Co-op Extension of Schenectady County
252 F. 3d 545, 664 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hollander v. American Cyanamid Co.,
895 F2d 80, 85 (2dCir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Jaroslawicz v. Seedeman,
528 F.2d 727, 731 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lewis v. Cowen,
165 F3d 154 (2d Cir, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Little v. National Boradcasting Co.,Inc.,
210 F. Supp.2d at 330, 384 (S.D.N.Y) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Matsushita Elec. Indus. Co.,Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 586 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McNeil v. St. Barnabas Hosp.,
1997 WL 729026* 5 (S.D.N.Y 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Moray v City of Yonkers
924 F. Supp. 8 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Morris v. Lindau,
196 F.3d 102, 109 (Cir, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mr. Healthy City School Dist. Bd. of Educ. v. Doyle,
429 U.S at 274, 287 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rao v. New York City of Health and Hospitals Corp.,
905 F. Supp. 1236, 1242-43 (S.D.N.Y. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Reeves v. Sanderson Plumbing Products.,
500 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Reuland v Hunes,
2004 WL 1354467, * 12 (E.D.N.Y 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Reyes-Aponte v. Dep't of Correction,
173 F.3d 845 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Scott v. Coughlin,
344 F. #d 282, 287-288 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Cone,
354 F.2d 119, 127 (2d Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wallace v. Suffolk County Police Department,
04-CV-2599 (E.D.N.Y 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Watters v City of Philidephia ,
55 F.3d 886, 892-93 (3d cir. 1995); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

White Plains Towing Corp. v Patterson
991 F.2d 1049,1060 (2d Cir 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## PRELIMINARY STATEMENT

This action was commenced by Kevin Brady, a retired police officer for the Suffolk County Police Department.  The Complaint, includes claims of discrimination and retaliation brought pursuant to 42 U.S.C. Section 1983[1]; New York State Executive Law, Human Rights Law § 290 et seq.; and New York City Human Rights Law, N.Y.C. Admin. Code Title 8.  Discovery has been completed, and Defendants the County of Suffolk ("SCPD"), Richard Dormer ("Dormer"), Henry Mulligan ("Mulligan"), Thomas Palmieri ("Palmieri"), and Michael Murphy ("Murphy") now move for summary judgment.  Plaintiff submits this memorandum of law, along with Plaintiff's Counter 56.1 Statement, and the Affidavit of Kevin Brady (with attached exhibits) in opposition to Defendants' motion.

## STATEMENT OF FACTS

Plaintiff was appointed as a Suffolk County Police Officer on December 6, 1993.  (Brady 10).[2]  After his appointment, he was initially assigned to the 1st Precinct, and was then permanently assigned to the 2nd Precinct in Huntington.  (Brady 10-11).  As an officer assigned to the 2nd Precinct, Plaintiff performed patrol work within the 205 sector, which covered East Northport.  (Brady 11).

---

[1]  Plaintiff's Section 1983 claims are based upon Defendants' violation of his rights to equal protection pursuant to the 14th Amendment, and Defendants' retaliation against Plaintiff due to his engaging in First Amendment protected speech.  Based on the Supreme Court's determination in Engquist v. Oregon Dept. of Agriculture, 128 S.Ct. 2146 (2008), Plaintiff withdraws his 14th Amendment claims.  Accordingly, this brief will not deal with those claims.

[2]  All citations to deposition testimony will be as follows: ([Last name of deponent][page number]).  Excerpts of all deposition transcripts are attached to Defendants' motion papers as Exhibit A.

In approximately 1999, Plaintiff requested and received a transfer to Highway Patrol. (Brady 11). Within the Highway Patrol, Plaintiff mostly patrolled Sunrise Highway in Suffolk County. (Brady 13).

As a police officer, Plaintiff is a member of the Police Benevolent Association ("PBA"), which is the police officers' union. (Brady 13-14). As members of the PBA, officers receive membership cards ("PBA cards"), which are issued by the PBA. (Brady 14). Police officers frequently give these PBA cards to friends and/or family. (Brady 14-16). Cardholders often use these cards to avoid liability for a traffic violation when stopped by a police officer. (Brady 15-16). The use of these cards in this manner is a common practice in Suffolk County, and creates a risk to the safety of the public, as individuals with these cards behave as if they are immune to being ticketed or arrested for traffic offenses. (Def't Ex. C).

On January 29, 2004, Executive Order 50-2004 was issued by the County Executive, Steve Levy. (Pl. Ex. 1)[3]. This Order prohibited police officers from declining to give tickets to individuals in violation of the traffic law due to their possession of a PBA card. (Brady 30-31).

Suffolk County has one of the worst vehicular fatality rates in New York State, and Plaintiff believes that one of the reasons is that there are too many people avoiding traffic tickets by using PBA cards. (Brady 21-22; Def't Ex. C; Pl. Ex. 2).

Despite the Order of the County Executive, Plaintiff's supervisors repeatedly instructed him not to give a ticket or summons to PBA cardholders. (Brady 17-18). In fact, the police department, as a whole, completely ignored this directive. (Brady 31).

While Plaintiff was pressured to ignore this directive, and did so on occasion, he was

---

[3] Plaintiff's Exhibits are attached to the Affidavit of Kevin Brady.

2

reprimanded and threatened with discipline for enforcing traffic rules against PBA cardholders. (Brady 18).

For example, on February 10, 2004, Plaintiff stopped an off duty custom's agent who was driving eighty-three miles per hour in a fifty-five mile per hour zone. (Pl. Ex. 3). Plaintiff advised the agent that he was driving at an unreasonably high speed, and told him to slow down. Id. Plaintiff did not issue the agent a ticket. The agent then sped off, reaching over 102 miles per hour; Plaintiff pursued him and again pulled him over, issuing him a traffic ticket. Id.

On May 19, 2004, Plaintiff attended a meeting with his supervisors, Deputy Inspector Blattler ("Blattler") and Lieutenant Palmieri. Plaintiff was advised at that meeting that there were complaints made that he had ticketed PBA cardholders. (Def't Ex. C). Plaintiff was advised that he should "use his discretion" when issuing tickets to these individuals. (Brady 19). Plaintiff asked for further guidance as to when or at what level he should use his discretion, but was not given further guidance as to a proper speed to start or stop issuing tickets. (Brady 21). Instead, through the tone and tenor of the meeting, as well as Defendants' refusal to provide further guidance, it was made clear to Plaintiff that he should not issue a ticket to law enforcement individuals or individuals with PBA cards, no matter what violation of the Vehicle and Traffic Law ("VTL") they had committed. (Brady 19). This is evidenced by the fact that Plaintiff was called to this disciplinary meeting for, in his discretion, ticketing law enforcement officials and/or individuals with PBA cards. (Brady Aff. ¶ 3).

At the May 19, 2004 meeting, Plaintiff engaged in protected speech, by expressing to his supervisors that the public's safety was at risk due to the department's failure to enforce the traffic laws. (Def't Ex. C). Plaintiff expressed his belief that this was a public safety concern, as the roads in Suffolk County were extremely dangerous due to the department's lack of enforcement, and that

traffic violations were not being documented.  Consequently, if someone was injured or killed, there was no record as to whether the perpetrator had been stopped once or fifteen times. (Brady 62; Def't Ex. C).  During that same meeting, because of Plaintiff's speech, Blattler threatened Plaintiff with a transfer to the day tour. (Brady 48; Pl. Aff. ¶ 5).  Blattler also reprimanded Plaintiff for writing the names of officers he pulled over in his patrol memo book, so that he would know if he subsequently pulled them over. (Brady 49).

That same day, Plaintiff wrote a letter to the Commissioner of Police, Richard Dormer. (Brady 48, 50).  He expressed in his letter that the roads in Suffolk County were extremely dangerous due to the department's lack of enforcement, that violations were not documented, and as a result, if someone is injured or killed, there is no record as to how many times the individual responsible had been previously stopped. (Brady 62; Def't Ex. C).

After the May 19, 2005 meeting, Plaintiff began writing the majority of his tickets when individuals drove at eighty-five miles per hour or more, unless there was a medical emergency. (Brady 23).  Other than that, Plaintiff typically did not ticket off duty police officers, or PBA card holders; Plaintiff did this because he feared negative consequences if he issued such tickets. (Brady 24).

Shortly after his protected speech, Plaintiff found PBA cards cut up and left in his mailbox at Highway Patrol. (Brady Aff. ¶ 7).  Plaintiff told police officer Mike Applequist, a PBA delegate, what happened.  Applequist expressed to Plaintiff that Plaintiff had no friends within the Police Department, due to his enforcement practices. Id.

In December 2005, an officer, Matt Petrowsky ("Petrowsky"), stopped an off-duty officer, Tony Gonzalez ("Gonzalez"), for driving under the influence of alcohol. (Brady 56).  Nothing was

done to Gonzalez, who subsequently threatened Petrowsky for pulling him over. (Brady 56). After hearing about this incident, Plaintiff sent an e-mail to Murphy, Palmieri, and Blattler questioning what he should do with an uncooperative off-duty officer, or a PBA cardholder who is pulled over. (Brady 56-58).

In January 12, 2006, Plaintiff met with Mulligan, Palmieri, and Murphy regarding his e-mail. (Brady Aff. ¶ 8). At this meeting, Plaintiff again expressed concern for the safety of the public if there was not a certain level of wrongdoing which resulted in a ticket to someone who had a PBA card. Id. Plaintiff was again informed to "use his discretion" when enforcing the VTL. Id. Plaintiff indicated that he used his discretion, as per their prior directive, by ticketing anyone who was traveling at or above eighty-five miles per hour, as no one, even law enforcement officials deserved a pass if they were driving at such an unreasonably high rate of speed. Id.

On March 30, 2006, Plaintiff was issued a counseling letter stating that he had to modify his enforcement tactics, despite the fact that he had: (a) always sought further guidance; (b) had been told, in response to his requests for guidance to use his discretion; and, (c) had used his discretion as per the order of his superiors. (Brady 63). Plaintiff indicated that he would comply with this order, and did so, increasing his issuance of tickets for traffic infractions above the speed limit, but below eighty-five miles per hour. (Brady Aff. ¶ 9).

Shortly after receiving this counseling letter, Plaintiff was transferred by his supervisors, who used his enforcement tactics as a pretext to subject him to retaliatory discipline due to his protected speech. (Brady 62). Plaintiff was subsequently transferred to a two tour in the 2nd Precinct. (Brady 84). This transfer resulted in a loss of night differential pay, as well as overtime opportunities within Highway Patrol. (Brady 85). Furthermore, the transfer moved Plaintiff to the Precinct that was

furthest from his home.  (Brady 85).

## **ARGUMENT**

### I.      **SUMMARY JUDGMENT STANDARD**

Summary judgment may only be granted when the moving has established that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In a motion for summary judgment, "the movant bears the initial burden of showing that there is no genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this initial burden, the non-movant must present "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The evidence of the non-movant is accepted as true and all justifiable inferences are to be drawn in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  While the court reviews the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves v. Sanderson Plumbing Products, Inc., 500 U.S. 133 (2000).

The Second Circuit has cautioned that the granting of a motion for summary judgment in discrimination actions is a drastic remedy that must be used "sparingly." Gallo v. Prudential Residential Serv., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994); Egelston v. State Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976).  It is drastic in that it has res judicata effect and deprives the litigant of his/her day in court and his/her opportunity to cross-examine the movant and the movant's witnesses. Eastway Constr. Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985), cert. denied, 484 U.S. 918 (1987); Egelston, 535 F.2d at 754.  In employment discrimination cases, where

6

liability often turns on the issue of intent, courts should approach a motion for summary judgment with special caution. <u>Gallo</u>, 22 F.3d at 1224. "Because employers rarely leave direct evidence of discriminatory intent, the court must scrutinize all of the available evidence in search of circumstantial proof to rebut the employer's explanation for its action." <u>Hollander v. American Cyanamid Co.</u>, 895 F.2d 80, 85 (2d Cir. 1990). If there is any doubt as to the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment must be denied. <u>Jaroslawicz v. Seedman</u>, 528 F.2d 727, 731 (2d Cir. 1975).

## II.   SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFF'S FIRST AMENDMENT CLAIMS

The elements of a First Amendment claim pursuant to § 1983 are as follows: (1) the plaintiff's speech was protected (2) the defendant(s) took an adverse action against the plaintiff and (3) there was a causal connection between the protected speech and the adverse action. <u>Scott v. Coughlin</u>, 344 F.3d 282, 287-288 (2d Cir. 2003). Each of these elements is discussed below.

### A.   <u>Plaintiff Engaged in Protected Speech</u>

Public employees, such as Plaintiff, are protected from employer discipline under the First Amendment, so long as their statements are not made pursuant to their official duties. <u>Garcetti v. Cebellas</u>, 547 U.S. 410 (2006). The Court in <u>Garcetti</u> held that the controlling factor was that plaintiff's expressions were made pursuant to his official duties. <u>Garcetti</u>, 547 U.S., at 1960.

The Supreme Court has held that a "public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." <u>Connick v. Myers</u>, 461 U.S. 138, 140 (1983)(citing <u>Pickering v. Board of Ed.</u>, 391 U.S. 563 (1968)); <u>See Morris v. Lindau</u>, 196 F.3d 102, 109 (2d Cir. 1999). As such, public employees also retain the right of

7

freedom of expression as guaranteed by the First Amendment to the United States Constitution. Lewis v. Cowen, 165 F.3d 154 (2d Cir. 1999).

In situations where speech touches upon both private issues as well as those of public concern, the speech is nonetheless entitled to protection as "Connick precludes First Amendment protection for public employees when they speak upon matters *only* of personal interest." Lewis 165 F.3d at 163 (quoting Connick, 461 U.S. at 147); see also, Moray v. City of Yonkers, 924 F.Supp. 8 (S.D.N.Y. 1996)(finding that even though Plaintiff's complaint discussed matters of personal interest, it was protected because speech aimed at eradicating racism, favoritism and sexism is a matter of public concern). Moreover, where speech may have an aspect that touches upon personal interest, the speech cannot be assumed to have a private motive behind it. Schlegel, 18 F.3d at 1005. Bald assertions by defendants cannot be used by a court to make this determination. Rather, defendants must put forth evidence which demonstrates the step from personal interest to private motive. Id. This is because "[v]irtually every citizen has a personal interest in matters of public concern; after all, each citizen is a member of the public and is, in some way impacted by the resolution of societal problems." Schlegel 18 F.3d at 1012. Therefore, without hard evidence that demonstrates a private motive behind the speech at issue, one cannot just assume that the speech had a private motive. Id. Also, "[t]he mere fact that a public employee chooses to discuss privately his concerns with his employer as opposed to expressing his views publicly does not alter the analysis." Ezekwo v. New York City Health and Hosp. Corp., 940 F.2d 775, 781 (2d Cir.1991); Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 414 (1979) (noting that neither the First Amendment itself nor Supreme Court decisions indicate that freedom of speech is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views

8

before the public.); <u>Rao v. New York City Health and Hospitals Corp.</u>, 905 F.Supp. 1236, 1242-43
(S.D.N.Y 1995).

"As a general matter, speech that addresses questions of public safety and police protection
has been recognized as involving matters of vital public concern. <u>Auriemma v. Rice</u>, 910 F.2d 1449,
1460 (7th Cir.1990), cert. denied, 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991); <u>Cromer
v. Brown</u>, 88 F.3d 1315, 1327 (4th Cir.1996); see also <u>Fikes v. City of Daphne</u>, 79 F.3d 1079, 1084
(11th Cir.1996); <u>Watters v. City of Philadelphia</u>, 55 F.3d 886, 892-93 (3d Cir.1995)." <u>Campbell v.
Towse</u>, 99 F.3d 820, 828 (7th Cir. 1996).  Further, matters relating to crime rates, effectiveness of
law enforcement, and a state police corps' performance of its duties are matters of a public concern.
<u>See</u>  <u>Reuland v. Hunes</u>, 2004 WL 1354467, * 12 (E.D.N.Y. 2004) (noting that crime rates are a
matter of public concern);  <u>United States v. Cone</u>, 354 F.2d 119, 127 (2d Cir. 1965) (noting that
"there is grave and growing concern about the increasing ineffectiveness of law enforcement");
<u>Watters</u>, 55 F.3d at 895 (noting that delivery of police services is matter of public concern);  <u>White
Plains Towing Corp. v. Patterson</u>, 991 F.2d 1049, 1060 (2d. Cir. 1993) (noting that "a state police
corps' performance of its duties is a matter of public concern").

Furthermore, the Supreme Court has held that "public concern is something that is a subject
of legitimate news interest." <u>City of San Diego, California v. Roe</u>, 543 U.S. 77, 83-84 (2004).

Here, Plaintiff expressed at a meeting with his supervisors, that he felt the public's safety was
at risk due to the lack of traffic law enforcement by the police department.  (Def't. Ex. C).  He
subsequently wrote a letter to the Commissioner of Police expressing the same concerns.  This was
clearly an issue of public concern, as it was the topic of news coverage during that time.  (Pl. Ex. 2).

Furthermore, writing such a letter was not part of Plaintiff's regular duties as a patrol officer

9

with the Highway Patrol (Brady Aff. ¶ 10), and as a result, was clearly not done pursuant to his official duties. Furthermore, while Plaintiff's letter, admittedly, touches upon some issues of private concern (i.e. his potential discipline and his desire for a camera to be installed in his car), it cannot be said, as a matter of law, that Plaintiff's expression of concern for the safety of the public due to the lack of enforcement of the law on Suffolk County roadways, was not protected speech. In fact, this speech clearly was protected, as such speech touched on matters of public concern (the safety of Suffolk roadways, and the enforcement practices of Suffolk County police officers), and such speech was not made pursuant to Plaintiff's official job duties. Thus, Plaintiff has engaged in protected speech.

### B.    <u>Adverse Employment Action</u>

The Second Circuit's standard to be applied in determining whether an action constitutes an adverse action for the purposes of a First Amendment retaliation claims is: "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." <u>Wallace v. Suffolk County Police Department</u>, 04-CV-2599 (E.D.N.Y. 2007) *citing to* <u>Zelnick v. Fashion Inst. of Tech.</u>, 464 F.3d 217, 227 (2d Cir. 2006). Included among actions that constitute an adverse action, pursuant to the Second Circuit, are a reduction in pay or reprimands. <u>Id</u>. The Second Circuit has squarely ruled that a transfer to a tour that deprives an officer of night differential pay is an adverse employment action. <u>Reyes-Aponte v. Dep't of Correction</u>, 173 F.3d 845 (2d Cir. 1999).

In the present case, Plaintiff was transferred as a result of his protected speech. This transfer resulted in a loss of night differential pay and overtime pay. Furthermore, this transfer was to the

10

precinct furthest from Plaintiff's home.  Clearly, the transfer of Plaintiff constitutes an adverse action, in that it would reasonably dissuade an employee from engaging in protected speech.

Similarly, the counseling memos that Plaintiff received constitute adverse actions, in that such reprimands, issued after engaging in protected speech, could reasonably dissuade an employee from engaging in protected speech.  Accordingly, Plaintiff has been subjected to adverse employment actions.

### C.    <u>Causal Connection</u>

"Causation generally is a question for the finder of fact.  On this motion, the role of the Court is to determine whether [Plaintiff] has alleged facts that could support a reasonable finding of a causal connection between his protected speech and the adverse employment action." <u>DePace</u>, 183 F.Supp.2d at 638.  To satisfy this element of the *prima facie* test, a Plaintiff must establish "a causal connection between the protected activity and the adverse employment action" <u>McNeill v. St. Barnabas Hosp.</u>,1997 WL 729026, *5 (S.D.N.Y 1997).  The causal connection must be sufficient to warrant the inference that the protected speech was a motivating factor in the adverse employment action.  See  <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. at 274, 287 (1977); <u>Morris</u>, 196 F.3d 102, 110.  Generally, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the Plaintiff by the defendant." <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000); <u>Borrero v. Collins Bldg. Services, Inc.</u>, 2002 WL 31415511, at *15 (S.D.N.Y Oct. 25, 2002); <u>Little</u>

11

v. National Broadcasting Co., Inc. , 210 F. Supp.2d at 330, 384 (S.D.N.Y. 2002); Chertkova v. Conn. Gen. Life Ins., 92 F.3d 81, 90 (2d Cir. 1996) (noting that courts consider remarks made by decision makers that could be viewed as reflecting a discriminatory animus in determining whether Plaintiff's speech was a motivating factor in defendant's decision to take adverse employment action against the Plaintiff.).

When determining whether a Plaintiff's speech was a motivating factor in a Defendant's decision to take an adverse employment action against the Plaintiff, courts can consider the sequence of events leading to the adverse employment action. Chertkova v. Conn. Gen. Life Ins., 92 F.3d 81, 90 (2d Cir. 1996). With respect to the "temporal proximity" needed to show indirect proof of causation there is no "bright-line" rule which sets forth the maximum length of time that can transpire between a Plaintiff's participation in protected activities and the ensuing adverse employment actions. See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F. 3d 545, 664 (2d Cir. 2001); See also Benedict v. Town of Newburgh Town Board, 125 F. Supp. 2d 675 (S.D.N.Y. 2000) ("[w]hile some appellate decisions have noted that the time elapsed between events is relevant, we know of no case in which the life expectancy of a [retaliatory] grudge has been established as a matter of law with such finite precision.").

In the present case, the timing of Plaintiff's discipline and threats of discipline evidence a causal connection, as Plaintiff was threatened with discipline shortly after his protected speech, and was subsequently transferred only after engaging in protected speech. In fact, the threat of discipline occurred during the same conversation in which Plaintiff engaged in protected speech. Furthermore, a causal connection sufficient to defeat this motion is evidenced by the fact that Defendants' alleged reasons for transferring Plaintiff to the Precinct furthest from his house (allegedly to provide him

12

with more supervision) are clearly pretextual. Plaintiff's transfer did not result in any additional supervision. (Brady Aff. ¶ 11). Finally, Defendants' pretextual basis for the discipline of Plaintiff (that he performed his job unsatisfactorily) is inconsistent with their directive to Plaintiff that was issued prior to his speech. More specifically, Plaintiff was directed to "use his discretion" prior to engaging in protected speech, and did so. After engaging in protected speech, however, Plaintiff followed Defendants' directive (to use his discretion) but was disciplined for doing so.

In sum, a reasonable juror could conclude that Defendants' alleged reasons for taking the adverse action that was taken against Plaintiff are pretext for retaliation. Additionally, the inference cam be made by the threatening comments of decision makers, as well as the timing and sequence of events. Thus, a jury could infer a causal connection.

## CONCLUSION

For the reasons set forth above, Defendants' motion should be denied with respect to Plaintiff's First Amendment claims.

Dated: Carle Place, New York
      January 6, 2009

<div style="margin-left:40%;">

Respectfully submitted,

LEEDS, MORELLI & BROWN, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, N.Y. 11514
(516) 873-9550

By: _____
    THOMAS RICOTTA (TR-1900)
    RICK OSTROVE (RO-7248)

</div>